CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 17 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 7:05CR00047 |
| v. | **MEMORANDUM OPINION** |
| RODNEY WILLIAM PERDUE, | By: Hon. Glen E. Conrad<br>United States District Judge |
| Defendant. | |

This case is before the court on the defendant's motion to suppress evidence seized from him on December 4, 2004. For the reasons that follow, the court will deny the motion to suppress the evidence.

### Factual and Procedural Background

On December 4, 2004, a confidential source telephoned Marvin Fitzgerald to arrange for him to deliver a quantity of cocaine and marijuana to the confidential source. Fitzgerald agreed to meet in room 140 in the Rodeway Inn to complete the transaction. When Fitzgerald arrived at the Inn's parking lot, he phoned the confidential source. The source identified Fitzgerald and his car and officers in two police cruisers apprehended Fitzgerald and his passenger by blocking their car with patrol vehicles.

Officer Kent Daniel stated that when he approached Fitzgerald's car and directed its occupants, Fitzgerald and Perdue, to exit the vehicle while keeping their hands in full view, they were initially uncooperative. He said that they would not turn off the vehicle or unlock the doors. He further stated that Perdue was "lurking around his waistband" prior to the two men's exit from the vehicle. The officers patted both men down.

The pat down of Fitzgerald revealed that he had cocaine and marijuana, but the pat down of Perdue uncovered nothing. Following this unfruitful search, the officers handcuffed Perdue, put him in a police car, and took him to the Roanoke Civic Center parking lot, where Officer Daniel conducted a subsequent pat down. Officer Daniel stated that "upon shaking his buttocks area, [I felt] what I knew to be contraband in between his butt cheeks," and that he then asked Perdue "if he would release the evidence." (Tr. 3). According to the officer, this request resulted in Perdue "tens[ing] up and clench[ing] his buttocks together," a reaction that prompted Officer Daniel to advise him "that I could get a search warrant ... or you know, we could just go ahead and pepper spray [you]." (Tr. 3). Perdue then surrendered a bag of crack cocaine to the officers. He was taken to the city jail, where the officers contacted Detective Kenneth Garrett of the Drug Enforcement Agency, who advised them that he would speak to the U.S. Attorney about federal charges and that Perdue should be released. Perdue left that evening, without having been charged in the matter or promptly brought before a magistrate judge for a hearing on probable cause. An initial indictment against Perdue was filed on May 26, 2005, and a superceding indictment, which included a new count against him, was filed on February 2, 2006.

## Discussion

The defendant argues that the cocaine base seized from him should be suppressed on the grounds that the search that revealed it was conducted in violation of his Fourth Amendment rights. Noting the two relevant exceptions to the warrant requirement–the "stop and frisk" doctrine of Terry v. Ohio, 392 U.S. 1 (1968), and the "search incident to a lawful arrest" doctrine–the defendant contends that neither applies in this case. The defendant argues that Terry does not justify the arrest and subsequent search of Perdue and that the arrest was illegal because it was made without probable cause.

2

The defendant concedes that the initial frisk of him in the parking lot of the Rodeway Inn was lawful under Terry. However, the defendant argues that once the officers handcuffed him and transported him to the parking lot of the Roanoke Civic Center, the detention became an unlawful arrest because it was not supported by probable cause. The mere handcuffing of an individual alone is not sufficient to transform an otherwise permissible Terry stop into a full-blown arrest. See United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989); United States v. Moore, 817 F.2d 1105, 1108 (4th Cir. 1987) ("A brief but complete restriction of liberty is valid under Terry."); United States v. Bautista, 684 F.2d 1286, 1289 (9th Cir. 1982). Likewise, an automobile blockade is not necessarily tantamount to an arrest. United States v. Perate, 719 F.2d 706, 709 (1983). Absent the individual's consent, transportation in handcuffs to a separate location and then to the police station for further investigation is a *de facto* arrest. Kaupp v. Texas, 538 U.S. 626 (2003). The question presented in this case is whether the handcuffing and transportation of Perdue to the Roanoke Civic Center parking lot for a more thorough search constituted an arrest supported by probable cause.

The government concedes that the issue in this case is not whether the transportation and further search constituted a permissible extension under the Terry doctrine. Instead, the government's sole argument is that the officers had probable cause to believe that Perdue had committed an offense, and therefore they were justified in arresting him. In response, the defendant argues that the officers had, at most, a suspicion that Perdue's actions were unusual, but that they lacked probable cause. Consequently, the defendant asserts that the search was unconstitutional.

Probable cause is evaluated by the totality of the circumstances, and it is a "practical, nontechnical conception." Illinois v. Gates, 462 U.S. 213, 230-31, 103 S. Ct. 2317 (1983);

3

Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302 (1949). Moreover, it is "a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." Illinois, 462 U.S. at 232. In the particular factual context presented in this case, the officers had the requisite information to establish probable cause.

At the time Perdue was handcuffed and moved to the Civic Center, the facts as the officers were aware of them were these: (1) the driver of the car in which Perdue was riding was responding to a call from a confidential informant seeking to make a drug purchase from the driver; (2) the driver was positively identified by the informant upon arrival at the motel parking lot; (3) both the driver and Perdue initially refused to cooperate with the officers when ordered to do so; (4) while refusing the officers admittance into the vehicle, Perdue made surreptitious shoving motions in the back of his pants; and (5) the initial pat down did not reveal a weapon on Perdue. The practical knowledge and experience of Officer Daniel included the following pertinent information: (1) drug dealers frequently take a companion along on deals for protection or to deliver the drugs; (2) in his experience, no drug dealer had ever been accompanied to a drug deal by an individual who was totally uninvolved in the drug activity; (3) those involved in the drug trade often carry firearms; and (4) when encountered by law enforcement, those in possession of drugs frequently attempt to hide them in or about their buttocks. The combined effect of the on-site observations and prior experience of the police officers amounted to probable cause to arrest Perdue.

The defendant contends that the sum of his mere presence, indistinct gestures, and the negative frisk fell short of probable cause, and therefore the only authority on which he could be detained was Terry. The facts present an admittedly close case for probable cause. As a general

4

matter, however, "probable cause to search ... exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696, 116 S. Ct. 1657 (1996). This standard suggests that when an individual is observed traveling to the site of an anticipated drug deal with a prospective drug dealer, and when that individual is then seen resisting police orders while shoving an object down the back of his pants, and when an initial pat down of him reveals that the item being shoved was not a weapon, an officer of reasonable prudence would be warranted in believing that contraband would be found on such individual. See id. at 696 ("The principal components of a determination of ... probable cause will be the events leading up to the ... search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer amount to ... probable cause."). In addition, an officer is not required to abandon his prior experience in the field when making the probable cause determination. Id. at 700 (explaining that "our cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists"); see also United States v. Ortiz, 422 U.S. 891, 897, 95 S. Ct. 2585 (1975). Officer Daniel has over 11 years of experience with the Roanoke City Police Department, and estimates that he has been involved in over 300 arrests for cocaine, approximately 100 of which involved a situation where the defendant had secreted the narcotics in his or her buttocks or groin area.

    The necessary conclusion is that, based on the facts as they knew them and their prior experience intercepting drug traffickers, the officers had probable cause to arrest Perdue. The defendant agrees that if probable cause to arrest existed, the search of his person at the Civic Center was proper. Chimel v. California, 395 U.S. 752 (1969). Accordingly, the search was not unconstitutional.

5

Case 7:05-cr-00047-GEC   Document 46   Filed 02/17/06   Page 5 of 6   Pageid#: 79

While the court is concerned that the agents involved in apprehending Perdue violated provisions of state law by not bringing him before a magistrate immediately, the court is constrained to agree with the government that such a violation is not relevant to the question of whether the evidence found during the search should be suppressed.

## Conclusion

The sum of the circumstances as they were known to the officers, in conjunction with their knowledge of the workings of the drug trade, constituted probable cause to make an arrest of Perdue. Because both parties agree that if probable cause existed, the subsequent transportation and search of Perdue was constitutional. The motion to dismiss will therefore be denied.

DATED this 16th day of February, 2006.

*[signature]*
United States District Judge

6

Case 7:05-cr-00047-GEC   Document 46   Filed 02/17/06   Page 6 of 6   Pageid#: 80